UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOHN EDWARD DAWSON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:13-CV-240-TAV-CCS |
| | ) |
| MONROE COUNTY, TENNESSEE, | ) |
| JAMES PATRICK HENRY, individually, | ) |
| DOUG BRANNON, individually, and | ) |
| BILL BIVENS, individually, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This civil matter is before the Court on several motions: (1) defendants Monroe County, Tennessee and Bill Bivens' (collectively, the "County defendants") Motion to Dismiss [Doc. 11]; (2) defendant Doug Brannon's Motion to Dismiss for Failure to State a Claim [Doc. 13]; and (3) defendant James Patrick Henry's Motion to Dismiss [Doc. 25]. Plaintiff submitted a response to each respective motion [Docs. 16, 19, and 29], to which defendants submitted reply briefs [Docs. 22, 23, and 32]. For the reasons discussed herein, the defendants' motions to dismiss [Docs. 11, 13, and 25] will be denied.

I. **Background**[1]

This dispute arises from events that occurred during plaintiff's pre-trial incarceration in the Monroe County jail. In 2007, defendant Henry, a former detective with the Monroe County Sheriff's Department, began investigating plaintiff as a suspect in the 2006 homicide of Troy Green [Doc. 1 ¶ 15]. On January 12, 2007, members of the Sheriff's Department and others executed a search warrant of plaintiff's home and automobiles, seizing plaintiff's red Chevrolet truck for further investigation in the process [*Id.* ¶ 16]. As part of his investigation, Henry interviewed Monte Cox, in an attempt to gain incriminating evidence against plaintiff [*Id.* ¶ 18. When Cox's story did not at first implicate plaintiff, plaintiff alleges, Henry asked Cox to change his story to implicate plaintiff in exchange for the release of one of Cox's friends in prison, assuring Cox "that was the way things were done in Monroe County" [*Id.* ¶¶ 20-21].

During this time period, and unrelated to Henry's murder investigation, plaintiff was indicted on criminal charges in separate indictments in McMinn County, Tennessee in May 2007 and Monroe County in July 2008, respectively [*Id.* ¶¶ 17, 23]. Following his return to Monroe County from federal prison, plaintiff was arraigned, appointed counsel as to the 2007 and 2008 charges, and incarcerated at the Monroe County jail [*Id.* ¶ 24].

---

[1] For the purposes of a motion to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all the factual allegations contained in the complaint" (citations omitted)).

Following defendant's incarceration on these unrelated charges, plaintiff alleges that Henry orchestrated a scheme in order to gain information regarding the unsolved Green murder, which included using plaintiff's cellmate, Todd Sweet, as a means to obtain incriminating details from plaintiff [Doc. 1 ¶ 25].  In order to facilitate this scheme, plaintiff alleges, Henry and other officers presented themselves as attorneys to both Sweet and plaintiff under the fictitious names Paul Harris and Neil Fink [*Id.* ¶ 26], and used these fictitious identities to plant recording devices in plaintiff's cell and communicate with both Sweet and plaintiff [*Id.* ¶¶ 28, 30].  During this time period, Henry, acting under the guise of the fictitious attorneys, sent six letters intended for and directed to plaintiff, none of which were shared with plaintiff's actual attorney, including a letter detailing the release of the previously seized Chevrolet truck [*Id.* ¶ 38].  Although defendant Bivens, the Monroe County Sheriff, learned of Henry's conduct in 2008, plaintiff alleges that Bivens took no action against Henry or any of the other involved officers [*Id.* ¶ 48].  In January 2009, defendant Brannon, acting on behalf of Henry, met with plaintiff in a visitor's booth at the jail, during which Brannon pretended to be an attorney associated with Harris and Fink and informed plaintiff that he could potentially be released from jail the following Saturday [*Id.* ¶¶ 40-44].  All of this conduct, plaintiff alleges, was undertaken for the purpose of gaining incriminating evidence against plaintiff for the Green murder.

As a result of Henry, Brannon, and others' actions, plaintiff believed that the fictitious attorneys Harris and Fink were representing him on all of his pending charges [Doc. 1 ¶ 46].[2]  In January 2009, plaintiff's court-appointed attorney requested a mental evaluation because plaintiff refused to cooperate with her on the basis that he was being represented by another lawyer who was handling his pending charges [*Id.* ¶ 49].  In May 2009, plaintiff's court-appointed attorney learned that members of the Monroe County Sheriff's Office had represented themselves as attorneys to plaintiff, prompting the filing of a motion to dismiss the pending criminal charges [*Id.* ¶ 51].  After holding a hearing in which Henry, Brannon, and others presented testimony as to their conduct, the Monroe County Criminal Court denied plaintiff's motion, and plaintiff subsequently entered into a plea agreement as to all charges pending at the time [*Id.* ¶ 53].  In doing so, however, plaintiff reserved the question of whether there were sufficient grounds for dismissing the indictments based upon Henry and Brannon's conduct.  On January 13, 2011, the Tennessee Court of Criminal Appeals dismissed the May 2007, July 2008, and January 2009 indictments against plaintiff as a result of Henry and Brannon's actions [*Id.* ¶ 64 (citing *State of Tennessee v. Dawson*, No. E2009-02469-CCA-R3-CD, 2011 WL 208076 (Tenn. Crim. App. Jan. 13, 2011)].

While Henry and Brannon attempted to gain incriminating information from plaintiff regarding the Green murder, other law enforcement agencies were similarly investigating the murder, finding additional suspects unconnected to plaintiff and other

---

[2] Plaintiff was indicted on additional charges which were similarly unrelated to the Green murder in January 2009 [*Id.* ¶ 39].

4

evidence that diminished the possibility of plaintiff's involvement [*Id.* ¶ 54]. Henry and Brannon, plaintiff alleges, did not follow-up with these other investigations, nor investigate other exculpatory evidence [Doc. 1 ¶¶ 55-57]. In addition, Henry, Brannon, and others, secured false evidence against plaintiff for the purpose of securing an indictment in the Green murder. As a result, Henry and Brannon ultimately presented this false evidence to a grand jury, and made omissions to the grand jury, which led the grand jury to indict plaintiff for the Green murder on January 7, 2010 [*Id.* ¶ 62]. In November 2011, plaintiff's attorney filed a motion to dismiss with respect to the murder charge, arguing that Henry and Brannon's conduct had violated plaintiff's rights, and that the murder indictment was based on the presentation of false evidence [*Id.* ¶ 66]. The trial court granted this motion on July 27, 2012 [*Id.* ¶ 67].

Plaintiff filed his complaint on May 1, 2013, asserting a claim under 42 U.S.C. § 1983 against defendants Henry and Brannon for malicious prosecution, as well as a claim against Bivens for supervisory liability and various claims against Monroe County under a theory of municipal liability.

## II. Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party may move to dismiss for failure to state a claim pursuant to Rule 12(b)(6). In order to survive a Rule 12(b)(6) motion, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent*

5

*Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor will an "unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pleading must "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

**III. Analysis**

In each of the pending motions, defendants move for dismissal of plaintiff's claims, arguing that plaintiff's action is time-barred by the statute of limitations. In addition, Henry argues that plaintiff cannot establish the necessary elements for a malicious prosecution claim. The Court will address each argument in turn.

### A. The Applicable Statute of Limitations

The County defendants argue that plaintiff's action is time-barred based upon application of the general rule that an action under § 1983 accrues at the time the plaintiff knew or should have known of the injury forming the basis of the claim, so that the statute of limitations began to run, at the latest, in January 2011 when the Tennessee Court of Criminal Appeals overturned plaintiff's convictions. The County defendants rely upon *Wallace v. Kato*, 549 U.S. 384 (2007) and *Fox v. DeSoto*, 489 F.3d 227 (6th Cir. 2007), in support of their position that the statute of limitations forecloses defendant's action, given that plaintiff's action was not filed until 2013. Plaintiff argues that the statute of limitations did not begin to run until July 2012, when the murder indictment was dismissed.

Constitutional claims asserted under 42 U.S.C. § 1983 are governed by the state personal injury statute of limitations. *Fox*, 489 F.3d at 233 (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). Tennessee Code Annotated § 28-3-104(a)(3) provides that a civil action brought under the federal civil rights statutes must be filed within one year after the cause of action accrues. Federal law, however, "determines when the statute of limitations begins to run on a § 1983 claim." *Fox*, 489 F.3d at 233. The statute of limitations "'ordinarily does not begin to run until the plaintiff has a complete and present cause of action.'" *Hornback v. Lexington-Fayette Urban Cnty., Gov't*, --- F. App'x ---, 2013 WL 5544580, at *2 (6th Cir. Oct. 8, 2013) (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 195 (1997)). In

7

*Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court, in ruling on when the statute of limitations for an action stemming from an unconstitutional conviction would begin to run, held that "[j]ust as the tort of malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor . . . so also a §1983 action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90. Since *Heck*, several courts of appeals have noted that, under federal law, a malicious prosecution claim does not accrue until proceedings terminate in the plaintiff's favor, as that is the moment in which the plaintiff has a complete cause of action. *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013) (citing *Heck*, 512 U.S. at 489); *see, e.g. Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013) (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)) (holding that malicious prosecution claim did not accrue until criminal charges against plaintiff were dismissed); *Malcomb v. Dietz*, 487 F. App'x 683, 685-86 (3d Cir. 2012) (*per curiam*) (citing *Rose v. Bartle*, 871 F.2d 331, 348-49 (3d Cir. 1989)) (noting that malicious prosecution claim did not accrue until proceeding was terminated in plaintiff's favor, that is, when traffic citation was withdrawn). In *Wallace*, the Supreme Court distinguished the tort of malicious prosecution, and the analogous claim for wrongful conviction raised in *Heck*, from the *Wallace* plaintiff's § 1983 action for false arrest, holding that the statute of limitations began to run for this action when the plaintiff was detained pursuant to legal process. 549 U.S. at 391-92; *see, e.g. Fox*, 489 F.3d at 235

8

(citing to *Wallace* and holding that statute of limitations for a claim for false arrest runs when plaintiff becomes detained under legal process).

The Court thus finds that *Wallace* and the corresponding Sixth Circuit cases regarding the statute of limitations for a false arrest claim are inapposite to this case, as plaintiff's action is not based on a claim of false arrest or false imprisonment but on malicious prosecution. As the *Wallace* court pointed out, a false imprisonment ends when the plaintiff is held pursuant to legal process, after which "unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." 549 U.S. at 390 (internal quotation marks omitted). Although the *Wallace* plaintiff only asserted a claim based on false arrest, the plaintiff in *Fox* asserted a claim based on malicious prosecution distinct from his claim of false arrest, which the Sixth Circuit addressed on the merits rather than merely holding that the claim was time-barred. *See Fox*, 489 F.3d at 237-38 (finding that plaintiff could not establish malicious prosecution because defendant could not show defendant's role in instituting criminal proceedings). The *Vann* case, relied upon by Henry in his supplemental response [Doc. 36] and referenced by the County defendants [Doc. 33], is similarly inapposite to the facts of this case, as there is no indication that the *Vann* plaintiff's claims were based on malicious prosecution. No. 13-5698 at 2 (noting that plaintiff raised Fourth Amendment claim based on arrest without probable cause, Sixth Amendment claim for denial of counsel, and Fifth Amendment claim for violating the right against self-incrimination).

9

In addition to the arguments raised by the County defendants, defendant Brannon argues that the statute of limitations rules set forth in *Heck* only apply where the plaintiff has been convicted. Since plaintiff's murder charge was dismissed, Brannon concludes, plaintiff's claim of malicious prosecution accrued when plaintiff became aware that his rights were violated. The Court disagrees. As previously discussed, *Heck* did not involve a malicious prosecution claim *per se*,[3] but involved a § 1983 claim based upon a wrongful conviction, which the Court analogized to the tort of malicious prosecution to aid in its analysis of when such a claim would be cognizable. Nothing in the *Heck* opinion requires that the statute of limitations be tolled only in instances where a claim of malicious prosecution is based upon an unlawful conviction, nor does Brannon cite to any case law for this idea. As a malicious prosecution claim under the Fourth Amendment "encompasses wrongful investigation, prosecution, conviction, and incarceration," *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quotation omitted), the statute of limitations begins to run when the criminal proceedings against the defendant are terminated, regardless of the stage at which those proceedings may have been when terminated.

In this case, plaintiff's malicious prosecution claim is based upon the theory that Henry and Brannon, under the knowing supervision of Bivens and in accordance with Monroe County policy, violated plaintiff's rights in order to prosecute plaintiff for the

---

[3] As the Court noted in *Wallace*, the Supreme Court has never defined the contours of a malicious prosecution suit under 42 U.S.C. § 1983, and assumed without deciding that such a claim was cognizable under the statute. 549 U.S. at 389 n.2.

Green murder. Thus, the statute of limitations did not begin to run until the criminal proceedings against plaintiff pertaining to the Green murder terminated in plaintiff's favor, which occurred when the indictment was dismissed on July 27, 2012. Accordingly, the Court finds plaintiff's action was timely under Tenn. Code Ann. § 28-3-104(a)(3).

B.  Whether Plaintiff Has Stated a § 1983 Malicious Prosecution Claim

Defendant Henry, while relying upon the statute of limitations arguments raised by the other defendants, also argues that plaintiff cannot establish the necessary elements for a malicious prosecution claim. Specifically, Henry argues that plaintiff cannot show whether the dismissal of the murder indictment constituted a favorable termination, citing to *Sewell v. Par Cable, Inc.*, 1988 WL 112915 (Tenn. Ct. App. Oct. 26, 1988) for the idea that the termination of criminal proceedings must indicate a plaintiff's innocence.

A plaintiff alleging a malicious prosecution claim under § 1983, when the claim is based on a violation of the Fourth Amendment, must show the following: (1) that a criminal prosecution was initiated and the defendant made or otherwise participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty; and (4) the criminal proceeding "must have been resolved in the plaintiff's favor." *Sykes*, 625 F.3d at 308-09 (citations omitted). In declining to require a § 1983 plaintiff claiming malicious prosecution to demonstrate malice, as required at common law, the *Sykes* court noted that "[c]ommon-law and § 1983 claims have different foundations . . . '[T]he constitutional tort 42 U.S.C. § 1983 authorizes stands on its own, influenced by the substance, but not

11

tied to the formal categories and procedures, of the common law.'" *Id.* at 309 (quoting *Albright v. Oliver*, 510 U.S. 266, 277 n.1 (1994) (Ginsburg, J., concurring)). Similarly, in *Frantz v. Village of Bradford*, the Sixth Circuit noted that state law cannot define a malicious prosecution claim under § 1983, "reject[ing] the application of state law to define the elements of a constitutional claim." 245 F.3d 869, 874-75 (6th Cir. 2001), *abrogated on other grounds as recognized by Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003); *see also Pierce v. Gilchrist*, 359 F.3d 1279, 1290 (10th Cir. 2004) ("rejecting the view that a plaintiff does not state a claim actionable under § 1983 unless he satisfies the requirements of an analogous common law tort"); *Castellano v. Fragozo*, 352 F.3d 939, 955 (5th Cir. 2003) (noting that "[t]he Fourth Amendment of the United States Constitution cannot be circumscribed by state tort law").

From this background, the Court finds it would be unnecessary and contrary to the well-established distinction between a § 1983 action and state tort claims for this Court to impose an additional limitation on plaintiff's statutorily-derived action based upon reference to the common law of tort. Plaintiff has not asserted any state claim in this case; rather, plaintiff's action is based upon the violation of his Fourth Amendment rights, a harm for which § 1983 provides a remedy. *See Fox*, 489 F.3d at 237 (recognizing § 1983 claim for malicious prosecution and collecting cases). Thus, while Henry contends that, under Tennessee tort law, plaintiff must show that the favorable disposition was based upon his innocence, the Court declines to adopt such a requirement

12

for a § 1983 action based upon malicious prosecution in violation of the Fourth Amendment.

Alternatively, Henry argues that plaintiff's action has not yet accrued because plaintiff could still be charged for the Green murder at a later date, so that the proceedings have not yet been terminated in his favor. The Court disagrees. Based upon the officers' conduct, the trial court dismissed the murder indictment against plaintiff, a result which was favorable to him. While Henry asserts that there is nothing from stopping the prosecution from seeking another indictment against plaintiff, the Court finds such speculation insufficient to dismiss a well-pleaded complaint, particularly given that there are currently no pending charges against plaintiff. *Cf. Smith v. Holtz*, 87 F.3d 108, 113 (3rd Cir. 1996) (finding that claim could not accrue so long as the potential for judgment in pending criminal prosecution existed, and would only accrue when charges were dismissed).

## IV. Conclusion

For the reasons stated, the County defendants' Motion to Dismiss [Doc. 11], defendant Brannon's Motion to Dismiss [Doc. 13], and defendant Henry's Motion to Dismiss [Doc. 25] are hereby **DENIED.**

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE